# Exhibit "A"

# NOTE

11/7/06
[Date]

STATEN ISLAND, NY 10314
[City, State, Zip]

154 PELTON AVENUE
STATEN ISLAND, NY 10314
[Property Address]

89266138
[Account Number]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$48820.52** (this amount is called "Principal" and consists of the amount financed [plus any prepaid finance charge [financed]], plus interest, to the order of the Lender. The Lender is Wells Fargo Financial Credit Services New York, Inc. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.25%**. This Note is interest bearing.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **22ND** day of each month beginning on **12/22/06** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on **11/22/46** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 98784** 

LAS VEGAS, NV 89193 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$ 34487.00** .

## 4. BORROWER'S RIGHT TO PREPAY

You can prepay your loan at any time. However, if your loan is secured, and if prepayment code A or B is shown on the Loan Statement, and if your loan is prepaid in whole for any reason (including after a default) within 1 year from the Date of Loan shown on the Loan Statement, we may charge a prepayment charge equal to 2% of the original principal balance of this loan. You agree to pay us this prepayment charge on the date you make the full prepayment. You also agree that any delay or failure to collect this prepayment charge does not prevent us from collecting the prepayment charge at a later time. However, regardless of how you prepay your loan, you will never have to pay more than one prepayment charge. The prepayment penalty described in this paragraph will be waived as required by applicable state or federal law or regulation. If prepayment code C is shown on the Loan Statement, we will not collect a prepayment charge under any circumstances.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment. This loan and Note are governed by the laws of New

Page 1 of 3

York, except that on first mortgage loans the rate of interest and the amount of points are permitted by P.L. 96-221, as amended.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)   Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2% of the full amount of my payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**(F)   Return Check Charge**

If a check used to make a payment on this loan is returned for any reason, except an error by Note Holder, I will pay Note Holder a $20.00 charge.

### 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this

Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 16, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 13 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower _____

_____ (Seal)
JOSEPH E GARTEN
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)

[Sign Original Only]

VOID
Merger did not occur
AUG 2 9 2012    SD

Without Recourse
Pay to the Order of
Wells Fargo Financial Credit Services
New York, Inc.

By: _____
Luke W. Reimers, Vice President    0003

Page 4 of 5



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301

## Hon. Stephen J. Fiala, County Clerk

### Recording and Endorsement Cover Page

| | | |
|---|---|---|
| Document Id: | 000000000144079 | Document Date: 11/17/2006 Preparation Date: 12/04/2006 |
| Document Type: | MORTGAGE | |
| Document Page Count: | 00016 | |

| PRESENTER: | RETURN TO: |
|---|---|
| WELLS FARGO FINANCIAL | WELLS FARGO FINANCIAL |
| 1110 SOUTH AVE STE 402 | 1110 SOUTH AVE STE 402 |
| | |
| STATEN ISLAND NY, 10314 | STATEN ISLAND NY, 10314 |

### PROPERTY DATA    # OF BLOCKS    1    # OF LOTS    1

Block    Lot              Unit    Address
150      215  Entire Lot          PELTON AVENUE
Property Type:    Dwelling Only - 1 Family

### PARTIES

| MORTGAGOR INDEX | MORTGAGEE INDEX |
|---|---|
| JOZETTE CARTER | WELLS FARGO FINANCIAL CREDIT SERVICES NY |
| 154 PELTON AVENUE | 1110 SOUTH AVE STE 402 |
| | |
| STATEN ISLAND NY, 10310 | STATEN ISLAND NY, 10314 |

Mortgage Cons:          $488,280.52

### PAYMENT DETAIL

Make Checks Payable to:
=======================================================================
Richmond County Clerk:                    62.00 Recording Fees
Richmond County Clerk:                 9,980.15 Mortgage Tax   **FEES PAID**
                              ----------------------
Total Payments For This Document:      10,042.15
=======================================================================



DATE DEC - 8 2006

LAND DOC# 166630
24-MORTGAGES
MTAX:  CX 18970
12/11/2006           $9,980.15
              10:22:33 A.M.
RECEIPT: 80162    FEE: $62.00
RICHMOND COUNTY CLERK

**RECORDED IN RICHMOND COUNTY**

DEC 11 2006

COUNTY CLERK

Prepared by:    Wells Fargo Financial, Inc.
800 Walnut Street
Des Moines, Iowa 50309


Return to:    WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.
1110 SOUTH AVE, 402
STATEN ISLAND, NY 10314


☐ **IF THIS BOX IS CHECKED, THIS IS A HIGH COST HOME LOAN SUBJECT TO PART
41 OF THE GENERAL REGULATIONS OF THE BANKING BOARD.**

Account Number: _____89266138_____

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A)    "Security Instrument." This document, which is dated _____11/17/06_____ , together with
all Riders to this document, will be called the "Security Instrument."

(B)    "Borrower." JOZETTE CARTER UNMARRIED

_____

whose address is 154 PELTON AVE, STATEN ISLAND, NY 10310

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C)    "Lender." Wells Fargo Financial Credit Services New York, Inc. will be called "Lender."
Lender is a corporation or association which exists under the laws of New York. Lender's address is
1110 SOUTH AVE, 402, STATEN ISLAND, NY 10314                    .

(D)    "Note." The note signed by Borrower and dated _____11/17/06_____ , will be called the
"Note." The Note shows that I owe Lender $488280.52_____ (U.S. Dollars) plus interest and other
amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt
in full by ____11/22/46____ .

(E)    "Property." The property that is described below in the section titled "Description of the
Property," will be called the "Property."

(F)    "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment
charges and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

(G)    "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H)    "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be
called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ Other(s) [specify] _____
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

(I)    "Applicable Law." All controlling applicable federal, state and local statues, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable, judicial opinions will be called "Applicable Law."

(J)    "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and
Assessments."

(K)    "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other
than by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial

institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 4) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(M) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) **"Periodic Payment"** means the regularly scheduled amount due for principal and interest under the Note.

(O) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**This property is improved by a one or two family residence.**

## CONSOLIDATION AGREEMENT

This Mortgage is hereby consolidated with a Mortgage dated _____N/A_____ and recorded on ____N/A____ in the office of the Clerk of _____N/A_____ County, in Liber No. ___N/A___ , Page No. ___N/A___ , Document No. ___N/A___ , in the original amount of $ N/A .

This Mortgage is hereby consolidated with a Mortgage dated _____N/A_____ and recorded on ____N/A____ in the office of the Clerk of _____N/A_____ County, in Liber No. ___N/A___ , Page No. ___N/A___ , Document No. ___N/A___ , in the original amount of $ N/A .

This Mortgage is hereby consolidated with a Mortgage dated _____N/A_____ and recorded on ____N/A____ in the office of the Clerk of _____N/A_____ County, in Liber No. ___N/A___ , Page No. ___N/A___ , Document No. ___N/A___ , in the original amount of $ N/A .

This Mortgage is hereby consolidated with a Mortgage dated _____N/A_____ and recorded on ____N/A____ in the office of the Clerk of _____N/A_____ County, in Liber No. ___N/A___ , Page No. ___N/A___ , Document No. ___N/A___ , in the original amount of $ N/A .

To compute recording tax:
New Amount Financed $ N/A
Less Old Unpaid Amount Financed $ N/A
Amount Taxed $ N/A

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The property which is located at _____ 154 PELTON AVENUE _____ ,
[Street]
_____ STATEN ISLAND _____ , New York _____ 10310 _____ .
[City, Town or Village]                                          [Zip Code]
This Property is in _____ RICHMOND _____ County. It has the following legal description:

> **The description of the property is on a separate form as "Addendum A to Mortgage." attached to and incorporated into this Mortgage."**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1.    Borrower's Promise To Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.

Payments due under the Note and Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**2.    Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note;

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3.    Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 3.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**4.    Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a

one-time charge for flood-zone determination, certification and tracking services, or (b) a one-time charge for flood-zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 4 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid

under the Note or this Security Instrument, whether or not then due.

**5.**   **Borrower's Obligations to Occupy The Property.**   I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**6.**   **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

   **(a)   Maintenance and Protection of the Property.**   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 4 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

   **(b)   Lender's Inspection of Property.**   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**7.**   **Borrower's Loan Application.**   If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**8.**   **Lender's Right to Protect Its Rights in The Property.**   If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

   Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 8, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 8.

   I will pay to Lender any amounts, with interest, which Lender spends under this Section 8. I will

pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

9. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 20). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be

applied in the order provided for in Section 2.

10.     **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 20 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

11.     **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that anyone of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 16 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 18.

12.     **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

13.     **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered

to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14.   Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**15.   Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**16.   Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 16, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 13 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**17.   Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 17 then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 16 of this Security Instrument.

**18. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**19. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 19. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 19 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial

actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

20. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 20 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 20 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 13 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 17 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

21. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

22. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 11 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 11 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 22.

23. **Borrower's Statement Regarding the Property [check box as applicable].**

☑ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Addendum and/or Rider signed by me and recorded with it.

Borrower

_____ (Seal)
JOZETTE CARTER

Borrower

_____ (Seal)

Borrower

_____ (Seal)

Borrower

_____ (Seal)

─────────────── [Space Below This Line For Acknowledgment] ───────────────

**STATE OF** NEW YORK )
                 ) SS:
**County of** RICHMOND )

On the 17th day of _____ November _____ in the year 2006 , before me, the undersigned, personally appeared JOZETTE CARTER UNMARRIED _____
_____
_____,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

STEVEN C. DISALVO

My Commission Expires _____ 11/21/09 _____

**STEVEN C. DiSALVO**
Notary Public, State of New York
No. 01DI6137335
Qualified in Richmond County
Commission Expires on _11/21/09_

The undersigned hereby acknowledges and agrees on behalf of the creditor/mortgagee to the consolidation described in the Section titled CONSOLIDATION AGREEMENT above.

Creditor/Mortgagee: _____NA_____

_____NA_____

By: _____ _____NA_____

Its: _____ _____NA_____

STATE OF      NA               )
                               ) SS:
County of ____NA____           )

On the 17th day of _____November_____ in the year 2006 , before me, the undersigned,
personally appeared _____   NA
                                       NA
_____       NA
                                                                                ,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____NA_____
Notary Public

My Commission Expires _____NA_____

**Description of Property**

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the County of
Richmond, City and State of New York, and further described as follows:

BEGINNING at a point on the westerly side of Pelton Avenue distant 627.50 feet
northerly from the corner formed by the intersection of the northerly side of
Henderson Avenue and the westerly side of Pelton Avenue;

RUNNING THENCE South 81 degrees 55 minutes 47 seconds West 96.77 feet
U.S. Standard (South 81 degrees 35 minutes 07 seconds West-deed) to a point;

THENCE North 8 degrees 40 minutes 25 seconds West 35 feet (North 08
degrees 40 minutes 20 seconds West-deed);

THENCE North 81 degrees 55 minutes 47 seconds West 96.88 feet U.S.
Standard (North 81 degrees 35 minutes 07 seconds East 96.93 feet, deed) to
said westerly side of Pelton Avenue;

THENCE along the said westerly side of Pelton Avenue South 08 degrees 24
minutes 53 seconds East 35.00 feet to the point or place of BEGINNING.



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301

Hon. Stephen J. Fiala, County Clerk

Recording and Endorsement

Document Type:        ASSIGNMENT OF MORTGAGE
Document Page Count:      2

| PRESENTER: | RETURN TO: |
|---|---|
| DEFAULT ASSIGNMENT TEAM | WELLS FARGO BANK |
| WELLS FARGO BANK, N9289-016 | 1000 BLUE GENTIAN RD #200 |
| PO BOX 1629 | MAC: N9289-018 |
| MINNEAPOLIS,MN 55440 | EAGAN,MN 55121 |

PROPERTY DATA    # OF BLOCKS    1    # OF LOTS    1
                                 Unit
Block    Lot
150      215  Entire Lot

## PARTIES

ASSIGNOR INDEX                          ASSIGNEE INDEX
WELLS FARGO FINANCIAL CREDIT SERVICES NY    LSF9 MASTER PARTICIPATION TRUST
800 WALNUT ST                          13801 WIRELESS WAY

DES MOINES,IA 50309                     OKLAHOMA CITY,OK 73134

## PAYMENT DETAIL

Make Checks Payable to:
=================================================================================
Richmond County Clerk:                    34.00 Re**FEES PAID**
                      --------------------
Total Payments For This Document:         34.00
=================================================================================

EXAM _f_ DATE 9/1/16

LAND DOC# 619160
25-ASSIGN,AGREE,REL

09/02/2016    11:06:34 A.M.
RECEIPT: 40554    FEE: $34.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

SEP 0 2 2016



Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

## CORPORATE ASSIGNMENT OF MORTGAGE

Richmond, New York
"CARTER"

Date of Assignment: August 25th, 2016
Assignor: WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC. at 800 WALNUT ST, DES MOINES, IA 50309
Assignee: LSF9 MASTER PARTICIPATION TRUST at 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134
Executed By: JOZETTE CARTER UNMARRIED To: WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.
Date of Mortgage: 11/17/2006 Recorded: 12/11/2006 as Instrument No.: 166630 In the County of Richmond, State of New York.

Section/Block/Lot STATEN ISLAND-150-215

Property Address: 154 PELTON AVENUE, STATEN ISLAND, NY 10310
This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $488,280.52 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.
On 8/25/16

By: _Juliane M Christensen_

Vice President

STATE OF Minnesota
COUNTY OF Dakota

On the 25th day of August in the year 2016 before me, the undersigned, personally appeared Juliane M Christensen, Vice President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

_Jay Kenneth Sandahl_
Notary Expires: 01/31/19
Dakota, Minnesota

JAY KENNETH SANDAHL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301

Hon. Stephen J. Fiala, County Clerk

Recording and Endorsement Cover Page

Document Type:          ASSIGNMENT OF MORTGAGE
Document Page Count:      5 .

| PRESENTER: | RETURN TO: |
|---|---|
| T.D. SERVICE COMPANY | T.D. SERVICE COMPANY |
| 4000 W. METROPOLITAN DR. | 4000 W. METROPOLITAN DR. |
| 4TH FLOOR | 4TH FLOOR |
| ORANGE,CA 92868 | ORANGE,CA 92868 |

PROPERTY DATA      # OF BLOCKS      1      # OF LOTS      1
Block    Lot                    Unit
150      215   Entire Lot

## PARTIES

| ASSIGNOR INDEX | ASSIGNEE INDEX |
|---|---|
| LSF9 MASTER PARTICIPATION TRUST | US BANK TRUST NA |
| 13801 WIRELESS WAY | 13801 WIRELESS WAY |
| | |
| OKLAHOMA CITY,OK 73134 | OKLAHOMA CITY,OK 73134 |

## PAYMENT DETAIL

Make Checks Payable to:
=========================================================================
Richmond County Clerk:                    40.00 Recording Fees **FEES PAID**
                        --------------------
Total Payments For This Document:            40.00
=========================================================================


LAND DOC: 646436
25-ASSIGN,AGREE,REL
03/24/2017        12:23:23 P.M.    EXAM CP DATE 3/23/17
RECEIPT: 13156      FEE: $40.00
RICHMOND COUNTY CLERK


RECORDED IN RICHMOND COUNTY


MAR 2.4 2017


RECEIPT: 13156  FEE: $40.00 636
RICHMOND COUNTY CLERK

Recording Requested and Prepared By:
**T.D. SERVICE COMPANY**
**13801 Wireless Way**
**Oklahoma City, OK 73134**
**SUMAN BERA**

And When Recorded Mail To:
**T.D. Service Company**
**4000 W. Metropolitan Dr.**
**Suite# 400**
**Orange, CA 92868**

Space above for Recorder's use

Customer#: 1/1    Service#

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **LSF9 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134-0000**, hereby assign and transfer to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134-0000**, all its right, title and interest in and to said Mortgage in the amount of **$488,280.52**, recorded in the State of **NEW YORK**, County of **RICHMOND** Official Records, dated **NOVEMBER 17, 2006** and recorded on **DECEMBER 11, 2006**, as **Instrument No. 166630, in Book No. ---, at Page No. ---**. Executed by: **JOZETTE CARTER UNMARRIED** (Original Mortgagor).
Original Mortgagee: **WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.**. Legal Description: **See Attached Exhibit.**
Property Address: **154 PELTON AVE, STATEN ISLAND, NY 10310-0000**.
Assignments: **"See attached Assignment Chain exhibit."**

The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bonafide obligation.

Date: **FEBRUARY 22, 2017**
**LSF9 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE**
Power of Attorney Recorded on 12/02/14 As Instrument # 2014000396895 In the county of CITY OF NEW YORK, NY.

By: *Brandi Coulter*

Brandi Coulter, Authorized Signatory

This Assignment is not subject to the requirements of new section 275 of the real property law because it is an assignment with the secondary mortgage market.

State of **OKLAHOMA**       }

County of **OKLAHOMA**       } ss.

On **FEBRUARY 22, 2017** , before me, **Nancy Ortiz**, a Notary Public, personally appeared **Brandi Coulter** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Oklahoma City , County of **OKLAHOMA** State of **OKLAHOMA** . Witness my hand and official seal.

(Notary Name): **Nancy Ortiz**

My commission expires: 09/29/2020

**LSF9 MASTER PARTICIPATION TRUST** and office located at **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-0000**

Prepare By: **SUMAN BERA**

ASSIGNMENT CHAIN EXHIBIT

Mortgage recorded on **12/11/2006** Document # **166630** Book #NA, Page# NA executed on **11/17/2006** for borrower **JOZETTE CARTER UNMARRIED** and originated with **WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.,** in the amount of **$488,280.52**

Assignment of Mortgage recorded on **09/02/2016** Document # **619160,** Book #NA, Page# NA executed on **08/25/2016** for **WELLS FARGO FINANCIAL CREDIT SERVICES NEW YORK, INC.** to **LSF9 MASTER PARTICIPATION TRUST**

Assignment of Mortgage executed on **02/22/2017** for **LSF9 MASTER PARTICIPATION TRUST** to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST**

# ADDENDUM A
## TO
## MORTGAGE

### Description of Property

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the County of Richmond, City and State of New York, and further described as follows:

BEGINNING at a point on the westerly side of Pelton Avenue distant 627.50 feet northerly from the corner formed by the intersection of the northerly side of Henderson Avenue and the westerly side of Pelton Avenue;

RUNNING THENCE South 81 degrees 55 minutes 47 seconds West 96.77 feet U.S. Standard (South 81 degrees 35 minutes 07 seconds West-deed) to a point;

THENCE North 8 degrees 40 minutes 25 seconds West 35 feet (North 08 degrees 40 minutes 20 seconds West-deed);

THENCE North 81 degrees 55 minutes 47 seconds West 96.88 feet U.S. Standard (North 81 degrees 35 minutes 07 seconds East 96.93 feet, deed) to said westerly side of Pelton Avenue;

THENCE along the said westerly side of Pelton Avenue South 08 degrees 24 minutes 53 seconds East 35.00 feet to the point or place of BEGINNING.

This document was prepared by: Caliber Home Loans Inc.

[Space Reserved for Recording Information]

## LOAN MODIFICATION AGREEMENT
## FIXED WITH PRINCIPAL DEFERMENT

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

This Agreement (the "Agreement") is dated as of 5/19/2021 but effective as of the Modification Effective Date defined herein, by and between JOZETTE CARTER (collectively, the "Borrower" or "you") and Caliber Home Loans, Inc. (the "Servicer"), on behalf of the current owner of your loan (the "Lender").

**RECITALS:**

A.   Borrower has a mortgage loan, account number 9804736867 (the "Loan"). This loan is secured by property commonly referred to as 154 PELTON AVE STATEN ISLAND, NY 10310 (the "Property"). The legal description to the Property may be attached to this Agreement if required.

B.   Borrower signed the following documents in connection with the Loan:

- Note dated 11/17/2006 in the original amount of $488,280.52 (the "Note").

- Mortgage, Security Deed, or Deed of Trust on the Property, recorded in real property records of RICHMOND County, NY (the "Security Instrument"), with an original stated maturity date of 11/22/2046.

- The Note and the Security Instrument, together with all documents executed in relation to the Note and the Security Instrument, and in addition to any loan modification previously entered into by Borrower, are called the "Loan Documents".

C.   Borrower and Servicer want to modify the terms of the Note and Security Instrument.

In consideration of the foregoing Recitals and the terms, conditions, representations and warranties, and mutual covenants and agreements herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Servicer (collectively, the "Parties"), mutually agree as follows:

1.   **Conditions to Effectiveness of Agreement.**

a.   This Agreement will only be effective after Borrower signs and returns a signed original of this Agreement to Servicer on or before 6/30/2021.

b.   Lender will not be obligated or bound to make any modification of the Loan Documents if the Borrower fails to meet any one of the requirements under this Agreement.

Fixed Rate Mc

)

2.   **Modification of the Loan Documents**

If the conditions of this Agreement are satisfied, then the Loan is modified as follows:

a.  **Modification Period**: This modification will take effect on 6/22/2021 (the "Modification Effective Date"). The first modified payment will be due on 7/22/2021 (the "First Modification Payment Date") and the last modified payment will be due on 6/22/2061 (the "Maturity Date").

b.  **Term Extension**: The term of the Note has been extended and the new maturity date of the Loan will be 6/22/2061.

c.  **Combined Principal Balance**. On the Modification Effective Date, the Combined Principal Balance payable under the note is $813,403.90 (the "Combined Principal Balance"). This amount consists of unpaid and deferred interest, previously deferred amounts, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, less any amounts paid to Servicer but not previously credited to my loan. I understand that by agreeing to add these amounts to the outstanding principal balance, the added amounts accrue interest based on the interest rate in effect under this Agreement unless those amounts are either deferred as non-interest bearing or forgiven as specified in this Agreement.

d.  **Deferred Amounts**: We have agreed to defer your obligation to pay the following amounts (the "Deferred Amounts"):

Deferred Principal: $232,603.90

Deferred Amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

e.  **Interest Bearing Principal Balance**: The Combined Principal Balance minus the Deferred Amounts shall be referred to as the "Interest Bearing Principal Balance" and this amount is $580,800.00.

f.  **Modified Monthly Payment Amount**: You promise to make modified monthly payments in an amount set forth in the table below beginning on the First Modification Payment Date and ending on the Maturity Date. The total modified monthly payment amount may include modified monthly principal and interest payments, and any monthly escrow payments (to the extent Servicer will pay escrowed amounts), as identified below.

g.  **Modified Interest Rate**: Interest will be charged on the Modified Interest Bearing Principal Balance at a rate of 3.750% (the "Modified Interest Rate") beginning on Modification Effective Date. You will make modified monthly principal and interest payments based on this Modified Interest Rate as applied to the Modified Interest Bearing Principal Balance beginning on the First Modification Payment Date and ending on the Maturity Date.

h.  **Interest Calculation**: If your loan documents call for interest to be calculated using daily simple interest, or DSI, this Agreement permanently modifies your Loan so that interest is calculated on a monthly basis, also known as interest in arrears.

| Summary of Modified Monthly Payments: | |
|---|---|
| Modified Interest Bearing Principal Balance: | $580,800.00 |
| Modified Interest Rate: | 3.750% |
| Modified Monthly Principal and Interest Payment: | $2,337.87 |
| Monthly Escrow Payment (Taxes and Insurance)*: | $568.59 |
| **Total Modified Monthly Payment:** | **$2,906.46** |
| **First Modification Payment Date:** | 7/22/2021 |
| **Maturity Date** | 6/22/2061 |

\* Your Monthly Escrow Payment is an amount calculated in accordance with the Loan Documents, and Federal and State law. This amount may change from time to time if escrow items (taxes and insurance) increase or decrease.

3. **Events of Default.** A default under the terms of this Agreement constitutes a default under the terms of the Loan Documents. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

4 **Additional Covenants and Agreements.**

The Parties further agree to and acknowledge each of the following:

A. All persons who signed the Loan Documents must sign this Agreement in person or by an authorized representative, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) Servicer has waived this requirement in writing. Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

B. This Agreement supersedes the terms of any modification, forbearance, trial period plan or other workout plan that Borrower may have or have had in the past with Servicer or any prior servicer.

C. Except as specifically modified by this Agreement, the terms of the Loan Documents remain in full force and effect, and are duly valid, binding agreements, enforceable in accordance with their terms. This Agreement does not replace or release any terms in the Loan Documents, except as specifically modified by this Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

D. Borrower may not assign, and no person may assume, Borrower's rights under this Agreement or the Loan Documents without the prior written consent of the Servicer.

E. If all or any part of the Property or any interest in the Property is sold or transferred (or if

Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

F.   If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees or expenses to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is processed, then these amounts will become Deferred Amounts under the Loan Documents. Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement.

Deferred amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note, acceleration, or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to the Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

G.   Borrower will execute such other documents or papers as may be reasonably necessary or required to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At the option of the Lender, if Borrower elects not to sign any such corrective documentation, the terms of the operative Loan Documents will continue in full force and effect, and such terms will not be modified by this Agreement.

H.   This Agreement constitutes notice that any waiver by Servicer as to payment of taxes, insurance and other escrow items has been revoked. Borrower agrees and understands that Borrower will be required to pay certain escrow amounts as required by Servicer in accordance with applicable Federal and state law.

5.   **No Waiver.**

Except as specifically provided herein, the Security Instrument shall remain unaltered and in full force and effect and is hereby ratified and confirmed by the Parties hereto. This Agreement shall not constitute a novation of the Security Instrument. The execution, delivery and effectiveness of this Agreement shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any party under the Security Instrument.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.**

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement:

JOZETTE CARTER

Address 154 Pelton Ave ST NY 10310

Date: 6|10|2021

Witness Signature

Lauren Norby
Printed Witness Name

20 Robin Ct S.I NY 10309

43 Colfield Ave 2, NY
Address 10302

Date: June 10, 2021

Witness Signature

Jessica Wong
Printed Witness Name

Account Number: 9804736867

Caliber Home Loans, Inc.

By: _____

Date: _____

State of New York
County of Richmond

On the 10th day of June in the year 2021 before me, the undersigned, a Notary Public in and for the said state, personally appeared
Jezette Carter _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Signature _____

Printed Name: Saquana Johnson

**Borrower(s) and notary must sign all documents on the same day. Borrower(s) cannot sign any other documents prior or after the notary date. (Revised 8/27/14)**

## STAMP SEAL BELOW

SAQUANA JOHNSON
Notary Public • State of New York
No. 01JO6167522
Qualified in Richmond County
My Commission Expires 8/20/24